NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD HELMRICH, | Civil Action No.: 15-7939 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| MOUNTAIN CREEK RESORT INC., *et al.*, | |
| Defendants. | |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a Motion for Summary Judgment brought by Defendants Mountain Creek Resort Inc. ("Mountain Creek"), Appalachian Liquors Corp. ("Appalachian"), Andrew Mulvihill, Julie Mulvihill, William Polchinski, Rabih Younes, and Darren Heaps (collectively, "Defendants"). (ECF No. 33). Plaintiff Richard Helmrich has submitted opposition, (ECF No. 37), to which Defendants have replied, (ECF No. 42). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants Defendants' Motion insofar as it relates to Plaintiff's federal law claims and dismisses Plaintiff's remaining state law claims without prejudice and with leave to reinstate them in state court.

## I.    BACKGROUND

Defendant Mountain Creek is a ski resort and water park located in Vernon, New Jersey. (Defs. 56.1 ¶ 1).[1] Plaintiff Richard Helmrich was an employee of Mountain Creek until December

---

[1] These background facts are taken from the parties' statements of material facts, pursuant to Local Civil Rule 56.1, (ECF No. 33-1, Defendants' Rule 56.1 Statement of Material Facts ("Defs. 56.1"); ECF No. 38, Plaintiff's Response

2014. (Defs. 56.1 ¶ 19). Plaintiff started as a part-time, seasonal employee in 1998 and worked his way up to the salaried position of Food and Beverage Manager by 2011. (Defs. 56.1 ¶¶ 2–3). In December of 2011, Plaintiff was promoted to Assistant Director of Food and Beverage, in which role Plaintiff was responsible for overseeing the day-to-day food and beverage operations of the resort, hiring staff, planning and executing events, submitting payroll, and managing orders. (Defs. 56.1 ¶ 4–5). Plaintiff remained in this position until December 29, 2014, when he resigned. (Pl. Supp. 56.1 ¶ 48). Defendant William Polchinski was the Director of Food and Beverage at Mountain Creek and Plaintiff's direct supervisor until Polchinski was promoted in December of 2014. (Defs. 56.1 ¶¶ 6, 15). Defendants Andrew and Julie Mulvihill[2] were co-owners of Mountain Creek. (Defs. 56.1 ¶ 22). Defendant Rabih Younes is and was at all relevant times the Vice President of Hospitality at Mountain Creek. (Defs. 56.1 ¶ 16). Defendant Darren Heaps is an employee of Mountain Creek who replaced Polchinski as Director of Food and Beverage in December of 2014. (Defs. 56.1 ¶ 15).

Plaintiff is a six-foot-tall, 35-year-old male, weighing between 283 and 330 pounds. (Defs. 56.1 ¶ 7). Plaintiff's body mass index ("BMI") has ranged between 40.27 and 47.53, which is above the threshold for obesity. (Pl. Supp. 56.1 ¶¶ 2–3). Between 2008 and 2011, Plaintiff was diagnosed by his primary care physician as medically obese, a condition related to Plaintiff's congenital heart disease. (Defs. 56.1 ¶ 8; Pl. Supp. 56.1 ¶ 1). Plaintiff testified that he informed

---

to Defendants' Statement of Material Facts ("Pl. Resp. 56.1"); ECF No. 39, Plaintiff's Supplemental Statement of Material Facts ("Pl. Supp. 56.1"); and ECF No. 42-1, Defendants' Response to Plaintiff's Supplemental Statement of Facts ("Defs. Resp. 56.1")); as well as from Plaintiff's Complaint (ECF No. 1) ("Compl."). To the extent that Plaintiff admits to any material facts as stated by Defendants, the Court will cite only to "Defs. 56.1" and the relevant paragraph numbers. The Court will "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement[s] which extend beyond statements of fact." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, No. 03-2854, 2005 WL 3077915, at *2 (D.N.J. Nov. 15, 2005); *see also* L. Civ. R. 56.1 ("Each statement of material facts . . . shall not contain legal argument or conclusions of law.").

[2] In the interest of clarity, the Court refers to Andrew Mulvihill as "Mulvihill" and to Julie Mulvihill as "Julie Mulvihill."

Polchinski, Mulvihill, and Younes of his weight and heart conditions, but that he did not provide them with any formal documentation. (Defs. 56.1 ¶ 8; Pl. Supp. 56.1 ¶ 6). The parties agree that, sometime between 2012 and 2014, Plaintiff provided Polchinski with a note from Plaintiff's cardiologist restricting the amount of weight that Plaintiff was medically permitted to lift. (Defs. 56.1 ¶ 9). The parties dispute the extent to which Plaintiff adhered to this restriction while at work. (Defs. 56.1 ¶ 9; Pl. Resp. 56.1 ¶ 9). However, the parties do not dispute that between 2013 and 2015, Plaintiff regularly exercised with a personal trainer and engaged in other physical activity. (Defs. 56.1 ¶¶ 26–28). Plaintiff does not allege that his weight made it difficult for him to walk or stand or that it otherwise affected his ability to perform his job responsibilities, aside from the lift restriction prescribed by Plaintiff's cardiologist. (Defs. 56.1 ¶¶ 9, 28).

During the course of his employment at Mountain Creek, several individual defendants regularly made observations concerning Plaintiff's weight. Defendants do not dispute that Mulvihill directed several comments to Plaintiff about his weight, including comments made in front of other employees and investors. (Pl. Supp. 56.1 ¶¶ 7, 13, 15). In 2013, Mulvihill told Plaintiff, within earshot of other employees, that Plaintiff "needed to lose weight," after which Plaintiff began to see a personal trainer. (ECF No. 33-4, Ex. B ("Pl. Dep. Tr.") at 44:13-46:13). On another occasion, Mulvihill said to Plaintiff, in front of Polchinski, that Plaintiff was "still overweight" and "need[ed] to work harder at the gym," and "need[ed] to lose this weight." (Pl. Dep. Tr. at 46:18-47:5). Plaintiff testified that "at least four or five" times, as Plaintiff was walking up a hill at Mountain Creek, Mulvihill drove past Plaintiff in a golf cart and loudly made comments such as, "You need to keep walking this hill," "You need to lose this weight," and "You're still fat." (Pl. Dep. Tr. at 47:16-48:16). On at least one of these occasions, Plaintiff was walking with a group of people who heard Mulvihill's comment and laughed. (Pl. Dep. Tr. at 48:18-25). On

another occasion, Mulvihill told Plaintiff in front of other people that he "needed to keep going to [the trainer]" because Plaintiff "hadn't reached [his] goal." (Pl. Dep. Tr. at 49:7-24). Plaintiff further testified that in September of 2014, Mulvihill remarked in front of a group of potential Mountain Creek investors that Plaintiff "still [had not] lost that weight." (Pl. Dep. Tr. at 50:18-51:15). Mulvihill also said to Plaintiff, "you lost some weight, but there's still plenty more to go," and "keep it up, you'll lose that weight eventually." (Defs. 56.1 ¶ 22). Defendants maintain that Mulvihill, who at one time worked with the same personal trainer as Plaintiff, was merely "follow[ing] up] with [Plaintiff] about his training" as part of an effort "to help him lose weight." (Defs. 56.1 ¶ 22).

In accordance with Mountain Creek's harassment policy, Plaintiff notified Polchinski, his immediate supervisor, of at least one of these incidents. (Pl. Supp. 56.1 ¶ 9; Pl. Dep. Tr. at 46:18-47:7). The record does not make clear when or how many times Plaintiff raised his discomfort to Polchinski concerning Mulvihill's comments, nor is it clear what—if anything—Polchinski did about it. Nevertheless, the comments continued. In December of 2014, Andy Lagana, a chef at Mountain Creek, remarked in front of Polchinski and other employees that Plaintiff was "too large" and not "attractive" enough to approach customers' tables in the Mountain Creek restaurant. (Pl. Supp. 56.1 ¶ 16). Plaintiff again complained to Polchinski about this comment. (Pl. Supp. 56.1 ¶¶ 17–18). In response, Polchinski told Plaintiff that "it was Andy being Andy and that's just the way things were." (Pl. Dep. Tr. at 53:25-6). In addition, Plaintiff alleges that on one occasion, Julie Mulvihill told Plaintiff to "move quicker" when he was setting up for a banquet, which he interpreted to be a negative comment regarding his weight. (Pl. Dep. Tr. at 74:13-75:3).

Mountain Creek's official policy sets forth a formal complaint and investigation procedure for employee claims of harassment and discrimination. (Defs. 56.1 ¶ 20). Plaintiff, though

familiar with the policy, did not file a formal complaint with Human Resources concerning any of the comments he received from Mulvihill or Lagana. (Defs. 56.1 ¶ 21). The parties dispute the extent to which Mountain Creek encourages utilization of its formal procedures as a practical matter. (Pl. Resp. 56.1 ¶ 21). Plaintiff testified that he chose not to pursue a formal harassment or discrimination complaint with Human Resources because of a perception that employees who did so were either "swept under the table" or "treated differently" after they complained. (Pl. Resp. 56.1 ¶ 21; Pl. Supp. 56.1 ¶ 19–20). According to Plaintiff, "it was definitely not encouraged to go to HR over matters like this, which is why I never went there." (Pl. Dep. Tr. at 54:21-23).

Over the course of Plaintiff's employment under Polchinski's supervision, Plaintiff and Polchinski had a number of discussions verbally and via e-mail regarding Plaintiff's performance. (Pl. Supp. 56.1 ¶ 23; Pl. Dep. Tr. at 58:2-12). In July of 2014, Plaintiff received a written warning from Polchinski for "[s]ub-[s]tandard work performance." (ECF No. 33-4, Ex. C; Defs. 56.1 ¶ 10). Polchinski cited, *inter alia*, Plaintiff's failure to manage inventory and care for company property, failure to properly train and supervise staff, failure to maintain standards of cleanliness, and failure to address cash register discrepancies. (Defs. 56.1 ¶ 10). Plaintiff maintains that the written warning cited him for poor performance in "areas of responsibility that were delegated to . . . Polchinski." (Pl. Supp. 56.1 ¶ 24). Specifically, Plaintiff testified that he was "written up for a list of things . . . [that were] never officially appointed to [him]," and that he had expressed to Polchinski "numerous times" that these were among Polchinski's responsibilities, not Plaintiff's. (Pl. Dep. Tr. at 22:25-23:7). Plaintiff believes that he received this "write-up" in retaliation for raising those concerns with Polchinski. (Pl. Opp. Br. at 12). Plaintiff discussed the written warning with Polchinski and Mountain Creek's Human Resources Manager, Jennifer Kucharik. (Defs. 56.1 ¶¶ 11–12). In that meeting, Plaintiff expressed his view that Polchinski was delegating

additional duties to Plaintiff beyond the scope of his job responsibilities and holding him to a higher standard than his subordinates. (Defs. 56.1 ¶¶ 11–12). Plaintiff informed Kucharik that he felt he was being "treated differently" by Polchinski, (Pl. Supp. 56.1 ¶¶ 26, 28), and that Polchinski's attitude toward him was arrogant and disrespectful, (Pl. Dep. Tr. at 23:16-24:15). However, Plaintiff did not tell Kucharik or Polchinski that he felt he was being treated differently because of his weight. (Pl. Dep. Tr. at 24:16-19).

In December of 2014, the position of Director of Food and Beverage opened when Polchinski was promoted. (Defs. 56.1 ¶ 13). Mountain Creek's official policy "encourages employees to assume higher-level positions," and states that an employee seeking a promotion "will be considered for new positions along with other applicants." (Defs. 56.1 ¶ 14). Plaintiff claims, and Defendants deny, that Plaintiff had been promised a promotion by Polchinski or Younes. (Pl. Dep. Tr. at 64:10-24; Pl. Supp. 56.1 ¶ 31; Defs. Resp. 56.1 ¶ 31). However, Plaintiff was not told about the vacancy or encouraged to apply. (Pl. Supp. 56.1 ¶ 29). Defendant Heaps, who had previously worked under Plaintiff as a restaurant manager at Mountain Creek, was chosen for the position. (Pl. Supp. 56.1 ¶ 29; Pl. Dep. Tr. at 29:14-19).

Plaintiff met with Younes to discuss the reasons for which Plaintiff was not considered for the position of Director of Food and Beverage. (Defs. 56.1 ¶ 16). Certain of Plaintiff's qualifications are undisputed: Plaintiff holds an associate's degree in hospitality business management from Art Institute of New York, and Plaintiff had been an employee of Mountain Creek since 1998, working his way up to the role of Assistant Director of Food and Beverage. (Pl. Supp. 56.1 ¶¶ 32–35). At his meeting with Younes, Plaintiff expressed his disappointment at not having been told about the vacancy, but he did not tell Younes that he felt he was not promoted because of his weight. (Defs. 56.1 ¶ 16). Younes explained to Plaintiff that he was not chosen for

the promotion because he failed to improve his work performance after he received the July 2014 written warning, and because he lacked experience in cost analysis and lodging that were required for the position. (Defs. 56.1 ¶ 17). In an e-mail Younes sent to Kucharik, Polchinski, and Heaps on December 22, 2014, Younes explained that he told Plaintiff "we have a high belief in him and will prep him for his future growth." (ECF No. 33-4, Ex. E).[3] Younes also offered to personally "train [Plaintiff] for any future opening at [Mountain Creek] or as [a Food & Beverage] Director" for an affiliated property. (ECF No. 33-4, Ex. E). Furthermore, Younes encouraged Heaps to "give [Plaintiff] the time and chance to come back as part of the team, as he is a good asset to your team and a great second man in command." (ECF No. 33-4, Ex. E). Plaintiff claims that Younes suggested to Plaintiff at their meeting that Younes was considering reversing the selection of Heaps as Food and Beverage Director and that Younes had been "unaware of [Plaintiff's] credentials" prior to the meeting. (Pl. Supp. 56.1 ¶¶ 40–41).

Plaintiff further claims that his colleagues and supervisors continued to mistreat him in ways unrelated to his weight following the promotion of Heaps. Plaintiff testified that Heaps began "harassing" Plaintiff about his management style and became excessively critical of Plaintiff. (Pl. Dep. Tr. at 76:24-77:23). Plaintiff also testified that Younes blew kisses at Plaintiff on at least two occasions. (Pl. Dep. Tr. at 62:4-17; Pl. Supp. 56.1 ¶ 44). Plaintiff did not tell Younes that this made him uncomfortable or raise the matter with Human Resources. (Pl. Dep. Tr. at 62:21-63:7).

---

[3] Plaintiff argues that the December 22, 2014 e-mail from Younes is unauthenticated and that therefore this Court may not rely upon it at the summary judgment stage pursuant to Fed. R. Civ. P. 56(c) and Fed. R. Ev. 901(a). (Pl. Opp. Br. at 29–32). "The burden of proof for authentication is slight. All that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." *Jama v. U.S. I.N.S.*, 334 F. Supp. 2d 662, 678 (D.N.J. 2004) (quoting *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985) (quotation marks omitted)). Defendants have since filed an affidavit in which Younes, the custodian of the e-mail, affirms that it is authentic. (ECF No. 42-3, Ex. A). The Court therefore finds that this e-mail, supported by Younes's affidavit, may be considered.

Plaintiff subsequently resigned from his employment at Mountain Creek on December 29, 2014, citing what he perceived to be a hostile work environment. (Defs. 56.1 ¶ 19; Pl. Supp. 56.1 ¶ 48). Plaintiff testified that he resigned as a result of harassment, and that his decision was not motivated by Mountain Creek's failure to promote him. (Pl. Dep. Tr. at 80:18-81:5). Plaintiff sued Mountain Creek and the rest of the Defendants alleging violations of the Americans with Disabilities Act ("ADA") (Counts I–II), and the New Jersey Law Against Discrimination ("NJLAD") (Counts III[4]–VIII), as well as defamation (Count IX) and infliction of emotional distress (Count X).[5]

## II.  PROCEDURAL HISTORY

Plaintiff initiated this action on March 10, 2015. *Helmrich v. Mountain Creek Resort*, No. 15-1768 (D.N.J.) (dismissed July 20, 2015). On July 20, 2015, this Court granted Plaintiff's Motion for Voluntary Dismissal without prejudice for his failure to exhaust administrative remedies. *Id.* Plaintiff subsequently sought and obtained a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") and refiled this action on November 6, 2015. (ECF No. 1). In May of 2017, Mountain Creek filed for Chapter 11 bankruptcy, and shortly thereafter the Court referred all claims in this proceeding to federal bankruptcy court. (ECF No. 28). The Court reopened the case in March of 2018. (ECF No. 29). Defendants now move for summary judgment on all of Plaintiff's claims, arguing generally that: (i) Plaintiff does not meet the definition of a disabled person under the ADA or NJLAD; (ii) a reasonable jury could not conclude that Plaintiff was regarded as disabled under the ADA or NJLAD; (iii) even if Plaintiff

---

[4] The Complaint does not plead the statutory provision under which Plaintiff brings his claim for hostile work environment. (*See* Compl. ¶¶ 92–98). Plaintiff's Opposition Brief advances arguments based on NJLAD's hostile work environment provisions, and none based on the ADA. (*See* Pl. Opp. Br. at 19–24). Therefore, the Court construes Count III as a hostile work environment claim under NJLAD, and not under the ADA.

[5] Plaintiff's Complaint lists two "Fifth Cause[s] of Action." (*See* Compl. ¶¶ 103–22). The Court therefore numbers Plaintiff's second "Fifth Cause of Action" as Count VI, his "Sixth Cause of Action" as Count VII, and so forth.

did satisfy either of those standards, Plaintiff has not shown that Defendants discriminated against him on the basis of a disability or perceived disability; (iv) Plaintiff has not demonstrated that the comments he received constituted a hostile work environment under NJLAD; and (v) Defendants are entitled to judgment as a matter of law on Plaintiff's remaining claims. (*See generally* ECF No. 33-2 ("Def. Mov. Br.")).

### III.    <u>LEGAL STANDARD</u>

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he moving party must show that the non-moving party has failed to establish one or more essential elements of its case on which the non-moving party has the burden of proof at trial." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding disputed issues of material fact, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### IV.    <u>ANALYSIS</u>

#### A.    **ADA: Actual Disability**

Plaintiff claims that, in failing to promote him to the position of Director of Food and Beverage, Defendants discriminated against him on the basis of a disability in violation of the

ADA. (Compl. ¶¶ 87–88). In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate by a preponderance of evidence that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Lescoe v. Pa. Dep't of Corr.-SCI Frackville*, 464 F. App'x 50, 52 (3d Cir. 2012) (quoting *Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). A person is "disabled" within the meaning of the ADA when he or she is "substantially limited in a major life activity"—in other words, when he or she is "unable to perform a major life activity that the average person in the general population can perform." *Lescoe*, 464 F. App'x at 52 n.5 (quoting *Walton v. Mental Health Ass'n*, 168 F.3d 661, 665 (3d Cir. 1999)).

The Third Circuit has not determined categorically whether obesity is a disability that substantially limits a major life activity under the ADA. *See id.* at 53. In *Lescoe*, the Third Circuit considered whether a Pennsylvania corrections officer suffering from obesity was "disabled" within the meaning of the ADA. The plaintiff in that case, whose medical records indicated that he was morbidly obese, suffered from "mild lower back and foot pain" after standing for long periods as a result of his obesity. *Id.* at 52. The plaintiff claimed that he was entitled under the ADA to use a chair as a reasonable accommodation. *Id.* The Court held that the plaintiff "failed to establish by a preponderance of the evidence a prima facie case that he was a qualified individual with a disability under the ADA." *Id.* at 53. The Court reasoned that the plaintiff "did not establish any major life activities that were adversely affected by his weight," noting that he had passed various physical exams to obtain his position. *Id.* At least one district court in this Circuit has likewise rejected ADA claims based on obesity where the plaintiff's weight did not substantially

limit a major life activity. *See Ni v. Rite Aid of N.J.*, No. 10-1522, 2010 WL 2557523, at *3 (D.N.J. June 22, 2010) ("Except for rare circumstances, obesity is not considered a disability [under the ADA].").

Defendants argue that they are entitled to summary judgment on Plaintiff's actual disability claim because Plaintiff "is not disabled within the meaning of the [ADA]." (Def. Mov. Br. at 12). The Court agrees. Without excluding the possibility that obesity may under other circumstances constitute a disability under the ADA, the Court finds that it does not here. Plaintiff does not claim that his obesity "substantially limits one or more . . . major life activities." 29 C.F.R. § 1630.2(g)(1)(i). Plaintiff's factual circumstances are therefore similar to those of the corrections officer in *Lescoe*, who experienced pain after standing as a result of his weight, but whom the Third Circuit found not to be a qualified individual under the ADA. Here, Plaintiff observed a weight lifting restriction on orders from his cardiologist, but he does not dispute that his weight does not make it more difficult for him to stand, walk, bend, or complete other movements necessary for him to work. (Defs. 56.1 ¶¶ 9, 28).

Based on the record before this Court, Plaintiff has not demonstrated by a preponderance of the evidence that he meets the standard for an individual with a disability under the ADA. Therefore, this Court finds that Plaintiff has not demonstrated he is a "disabled person" within the meaning of the ADA, and, as a result, the Court need not consider whether Plaintiff satisfies the remaining requirements of a *prima facie* case for actual disability discrimination. Defendants are therefore entitled to summary judgment on Plaintiff's actual disability discrimination claim under the ADA.

## B.     ADA: Perceived disability

Alternatively, Plaintiff alleges that Defendants regarded him as being impaired by a

disability and discriminated against him on that basis. (Compl. ¶¶ 90–91). Under the 2008 Americans with Disabilities Act Amendments Act ("ADAAA"), a plaintiff asserting a regarded-as disability claim need not demonstrate that the disability he or she is regarded as having is one that substantially limits a major life activity. Rather, "an individual is 'regarded as' disabled when 'the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 48 (3d Cir. 2017) (quoting 42 U.S.C. § 12102(3)(A)).

The Third Circuit "has not yet recognized a cause of action against an employer who discriminates against an employee because it perceives the employee as disabled by obesity." *Lescoe*, 464 F. App'x at 53. In *Lescoe*, which post-dates the ADAAA, the Third Circuit rejected the plaintiff's regarded-as disability claim where there was no evidence that the plaintiff's employer perceived his weight to be an impairment. The Third Circuit reasoned that the plaintiff "fail[ed] to highlight any evidence supporting [his employer's] alleged belief that [the plaintiff] was somehow disabled because of his weight." *Id.* at 54. Other Circuits to consider such claims under the ADAAA have likewise determined that a plaintiff proceeding on a regarded-as theory for obesity is "required to show that his obesity was an actual or perceived physical impairment." *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1108 (8th Cir. 2016). For example, in *Morriss*, the Eighth Circuit considered whether Congress intended the broadened regarded-as liability under the ADAAA to encompass discrimination on the basis of obesity, considering the stated goal of the Amendments as well as guidance from the EEOC. The Eighth Circuit reasoned that, with the ADAAA, Congress intended to abrogate and broaden the Supreme Court's former interpretation of "substantially limits a major life activity," but that Congress left the language "physical

impairment" unchanged. *Id.* at 1111. The Court reasoned that the ADAAA creates liability where an individual who is "regarded as having [a physical] . . . impairment" is discriminated against on that basis, and that therefore the statute "prohibits actions based on . . . the perception of an existing impairment." *Id.* at 1113. Because the Court determined that the plaintiff "did not produce evidence that [his employer] perceived his obesity to be an existing physical impairment," the court affirmed summary judgment in favor of the employer. *Id.*[6]

Here, Plaintiff argues that he satisfies his burden of establishing that he was regarded as disabled by Defendants because "Mulvihill, Polchinski, and Younes . . . were aware of [Plaintiff's] heart and weight problems." (Pl. Opp. Br. at 11). Defendants do not dispute that at least Polchinski was aware of Plaintiff's heart condition and medical obesity, having received the note from Plaintiff's cardiologist regarding Plaintiff's lift restriction. (Defs. 56.1 ¶ 9). Even so, Defendants did not need formal documentation of Plaintiff's medical diagnosis or BMI in order to perceive that he was obese. Plaintiff testified that Mulvihill regularly commented on Plaintiff's obesity, and that Pulchinski was aware of this behavior. (*See generally* Pl. Dep. Tr. at 44:13-51:15). There is no question, therefore, that Defendants "regarded" Plaintiff as obese.

However, that is not what Plaintiff must prove. Instead, Plaintiff must demonstrate that Defendants perceived him as having some sort of limiting "physical . . . impairment." *Lackey*, 704 Fed. App'x at 48. Plaintiff does not argue that his weight limited his ability to stand, walk, bend, or complete other movements necessary for him to work. (Defs. 56.1 ¶¶ 9, 28). Plaintiff regularly participated in sports and other physical activities during his time at Mountain Creek. (Defs. 56.1 ¶ 28). Neither Plaintiff nor Defendants claim that Defendants perceived Plaintiff's weight as physically interfering with his ability to do his job. To the extent Plaintiff argues that Defendants'

---

[6] The Supreme Court has since denied certiorari of *Morris*, 137 S. Ct. 256.

knowledge of the lift restriction imposed by his cardiologist constitutes a perception that Plaintiff suffered from a physical impairment, the Court disagrees, as Plaintiff does not claim that Defendants discriminated against him because of his heart condition. Plaintiff likewise has not demonstrated that Defendants' remarks concerning his weight evince a perception that his weight was a physically limiting impairment rather than an aesthetic one. *See Lescoe*, 464 F. App'x at 52, 54 (concluding that the defendant's "actions [did] not indicate that it perceived [the plaintiff] to be disabled," despite evidence that plaintiff "was the subject of jokes and comments about his weight, the size of his belly, and not being able to see his groin area").

In other words, Plaintiff has failed to point to any evidence demonstrating that Defendants regarded him as "somehow disabled because of his weight." *Lescoe*, 464 F. App'x at 54. *See also Marsh v. Sunoco*, No. 06-2856, 2006 WL 3589053, at *4 (E.D. Pa. Dec. 6, 2006) (dismissing regarded-as disability discrimination claim based on plaintiff's weight, noting that "[i]t repeatedly has been held that excess weight or obesity, except in special circumstances where they relate to a physiological disorder, are not 'physical impairments' within the meaning of the statutes."); *cf. Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 544–45 (W.D. Pa. 2013) (declining to "definitionally exclude obesity when caused by an underlying physiological condition as a disability under the ADA," but noting that the court was "unaware of any district court in our Circuit that has decided whether obesity may be considered a disability under the ADA as amended by the ADAAA"). As a result, Plaintiff has failed to meet his burden of showing that Defendants regarded him as having a disability within the meaning of the ADA. The Court therefore concludes that Defendants are entitled to summary judgment on this claim.

## C. State Law Claims

Because the Court grants Defendants' Motion for Summary Judgment on Plaintiff's ADA

claims, the Court no longer has original subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims for which it has original jurisdiction." 28 U.S.C. § 1367 (c)(3). The Third Circuit has held that, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Triple T Constr. v. Twp. of W. Milford*, No. 14-2522, 2017 WL 123434, at *3 (D.N.J. Jan. 12, 2017) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). Furthermore, in this district, the "general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised when there is no longer any basis for original jurisdiction." *Schaffer v. Twp. of Franklin*, No. 09-347, 2010 WL 715349, at *1 (D.N.J. Mar. 1, 2010) (quoting *Edlin Ltd. v. City of Jersey City*, No. 07-3431, 2008 WL 2185901, at *7 (D.N.J. May 23, 2008)).

The Court recognizes that it may, in its discretion, exercise supplemental jurisdiction over state law claims where a case has reached a later stage of litigation, and that here, the parties have proceeded through discovery and to summary judgment. However, the Court also notes that this case remained inactive pending Mountain Creek's bankruptcy proceedings, and that less than one year has passed since it reopened. (*See* ECF No. 29). Furthermore, absent Plaintiff's federal ADA claims, this is a dispute between a New Jersey resident and his New Jersey employer involving matters of New Jersey law. *See Ass'n of N.J. Rifle and Pistol Clubs, Inc. v. Christie*, 850 F. Supp. 2d 455, 462 (D.N.J. 2012) (declining to exercise supplemental jurisdiction over claims between New Jersey parties concerning New Jersey law). Plaintiff's NJLAD claims concern issues of interpretation of state statutory law that would be more appropriately heard in New Jersey state

court. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties."); *Geronimo v. Slattery*, No. 13-1542, 2014 WL 202126, at *4 (D.N.J. Jan. 16, 2014) (declining to exercise pendant jurisdiction over remaining state law claims because "it would be preferable for a New Jersey court to decide" them). The Court therefore, in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## V.  **CONCLUSION**

For the aforementioned reasons, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's ADA claims. Plaintiff's claims under NJLAD, as well as his claims for defamation and infliction of emotional distress, are dismissed without prejudice and with leave to reinstate those claims in state court. An appropriate Order accompanies this Opinion.

DATED: October _15th_, 2018

_____
HON. JOSE L. LINARES
Chief Judge, United States District Court